## In re PETITION FOR DISCIPLINARY ACTION AGAINST Yvonne B. MOORE, a Minnesota Attorney, Registration No. 74895.

### No. A04–215.

Supreme Court of Minnesota.

Feb. 24, 2005.

Kenneth L. Jorgenson, Director, Timothy M. Burke, Senior Assistant Director, Office of Lawyers Professional Responsibility, St. Paul, MN, for Appellant.

Mark C. Stafford, Burnsville, MN, for Respondent.

## OPINION

PER CURIAM.

Respondent Yvonne B. Moore, a licensed Minnesota attorney since 1963, practices primarily in the area of family law. This attorney discipline case arose from a February 10, 2004, petition filed by the Director of the Office of Lawyers Professional Responsibility alleging that Moore violated Minn. R. Prof. Conduct 1.1

(competence), 1.3 (diligence), 1.4 (communication), and 8.4(d) (conduct prejudicial to the administration of justice)[1] when she did not attend a hearing she scheduled for a client, failed to inform the court she would not attend, did not attempt to obtain a continuance, advised her client that he need not appear, and failed to apprise her client of the potential consequences of not attending. The matter is now before us on the referee's report and recommendation that Moore be publicly reprimanded and placed on supervised probation for 2 years subject to conditions. We agree with the referee's recommendation and order that Moore be publicly reprimanded and placed on supervised probation for a period of 2 years.

In both her brief and her oral argument to this court, Moore challenged the referee's findings of fact. However, Moore did not order a transcript of the referee's findings, conclusions, and recommendations. Therefore, under Rule 14(e), Rules on Lawyers Professional Responsibility (RLPR), the referee's findings of fact and conclusions of law are conclusive. Those findings are summarized below.

In September 2001, a client retained Moore to represent him in marital dissolution proceedings. Although Moore and the client did not enter a formal retainer agreement, Moore's letter of engagement indicates that her representation "includes a hearing, but not possible trial." In addition, in a letter dated September 17, 2001, to opposing counsel, Moore states, *inter alia:* "At the present time I represent [the client] in his dissolution * * * communication of any sort should be only thru [sic] me."

In October 2001, Moore prepared and signed a "Notice and Motion" to modify visitation. She gave these documents to her client, who, without Moore's direct knowledge, filed them with the Ramsey County District Court. Based on Moore's signature on the filed document, district court administration regarded her as the attorney of record in the client's dissolution proceeding. Moore subsequently requested that the court administrator's office schedule a hearing regarding the filed motion. The hearing was scheduled for December 26, 2001. Moore also took part in a telephone scheduling conference with opposing counsel and the district court judge assigned to the matter. At Moore's request, the hearing was rescheduled to February 8, 2002.

Two or 3 days before the February 8, 2002, hearing, Moore contacted opposing counsel to inform him that she would not attend the hearing because she would be out of town on that date. Moore refused opposing counsel's request to continue the matter. On February 6, 2002, Moore telephoned her client to inform him that she would not attend the February 8, 2002 hearing. In response to the client's inquiry regarding whether he needed to attend the hearing, Moore advised him that he did not need to attend. She did not advise him of the possible repercussions for failing to attend a hearing.

Moore did not attend the hearing and failed to seek a continuance or inform the

---

1. Minn. R. Prof. Conduct 1.1 states: "A lawyer shall provide competent representation to a client." Minn. R. Prof. Conduct 1.3 states: "A lawyer shall act with reasonable diligence and promptness in representing a client." Minn. R. Prof. Conduct 1.4(b) states: "A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." Minn. R. Prof. Conduct 8.4(d) states: "It is professional misconduct for a lawyer to:

* * * *

(d) engage in conduct that is prejudicial to the administration of justice * * *."

court that she would not attend the hearing. Based on Moore's advice, the client also did not attend the hearing. Opposing counsel prepared for and attended the hearing. As a result of the failure of Moore or her client to appear at the hearing, the court dismissed the client's motion and ordered him to pay $540 in attorney fees incurred by the client's wife in responding to the motion.

On February 28, 2002, Moore withdrew from representation of the client. The client obtained a conciliation court judgment in the amount of $540 against Moore for reimbursement of the attorney fees awarded against him. Moore paid the client $500 to settle the matter.

Before the referee, Moore defended her failure to appear at the February 8, 2002, hearing by arguing that her client, who was himself an attorney and who had previously represented himself at hearings in the dissolution matter, gave her permission to be absent from the hearing. Moore also denied telling the client he did not need to appear at the hearing, claiming that it was her understanding that he would appear and represent himself. Further, Moore excused her failure to notify the district court that she would be absent from the hearing by stating that, in her experience, judges in Ramsey County "don't care" whether lawyers appear in court. She also argued that her opposing counsel "should have known" she was not representing the client. Finally, she argued that she did not believe that by taking part in the scheduling conference, contacting the court to schedule and reschedule a hearing, or signing her name on a notice of motion filed with the court meant that she was the attorney of record or that the judge or opposing counsel would rely on these representations to conclude that she was the attorney of record. The referee found these statements incredible and further found that Moore offered no evidence that she had initiated measures to prevent similar misconduct from occurring in the future.

Moore has been disciplined on three prior occasions. In June 1993, Moore was issued an admonition for demanding and receiving a $300 fee without first securing approval or consent from the Social Security Administration, failing to promptly return client property, and for non-communication with the client. In April 1995, Moore agreed to be placed on private probation for failing to place an advance fee payment into her client trust account, failing to return an unearned fee to a client, failing to provide an accounting of her billing, and failing to provide a client with a copy of a temporary restraining order. In November 1997, we affirmed a private admonition when Moore failed to attend a motion hearing, or obtain a continuance, and did not fully inform a client of the consequences of not attending a hearing. *In re Panel File 96–35*, 570 N.W.2d 499, 500 (Minn.1997).

The referee found that Moore's current misconduct was similar to conduct for which she previously received an admonition and that her disciplinary history shows a pattern of misconduct. The referee concluded that Moore's misconduct in the current case violated Minn. R. Prof. Conduct 1.3, 1.4(b), and 8.4(d) and recommended Moore be publicly reprimanded and placed on supervised probation for 2 years. The referee concluded that a violation of Minn. R. Prof. Conduct 1.1 had not been established by clear and convincing evidence.

■■■ Because the referee's findings of fact are conclusive when no transcript is ordered, the only issue we must resolve is the appropriate discipline to be imposed. In considering a petition for attorney discipline, we have the ultimate responsibility

for determining the appropriate sanction. *In re Oberhauser*, 679 N.W.2d 153, 159 (Minn.2004). "The purposes of disciplinary sanctions for professional misconduct are to protect the public, to protect the judicial system, and to deter future misconduct by the disciplined attorney as well as by other attorneys." *Id.* (citing *In re Daffer*, 344 N.W.2d 382, 385 (Minn.1984)).

■■ We consider four factors in determining the appropriate sanction: (1) the nature of the misconduct; (2) the cumulative weight of the violations of the rules of professional conduct; (3) the harm to the public; (4) the harm to the legal profession. *Id.* (citations omitted). We impose disciplinary sanctions on a case-by-case basis after considering both aggravating and mitigating circumstances, as well as looking to similar cases for guidance. *Id.*

■ The discipline recommended by the referee is consistent with the discipline we have imposed in other cases. In a recent case, we approved a public reprimand and 2 years' supervised probation where the attorney failed to act with adequate diligence in a probate matter, failed to communicate adequately with the client, failed to file probate documents by a court-ordered deadline, and failed to appear in court when ordered to do so. *In re Ruhland*, 689 N.W.2d 167, 167–68 (Minn.2004); *see also In re Pokorny*, 453 N.W.2d 345 (Minn.1990) (indefinitely suspending an attorney who, with three prior private disciplines, failed to attend three court appearances, issued an insufficient check to opposing counsel in payment of court-awarded fees, and failed to pay two judgments for law-related debts); *In re Haugen*, 373 N.W.2d 600 (Minn.1985) (imposing public reprimand and 2 years supervised probation where respondent failed to comply with discovery orders, failed to appear at a discovery hearing, failed to file a timely objection to a magis-

trate's recommendation that his client's claim be dismissed with prejudice, and failed to respond to probate orders of the district court); *In re Mitchell*, 368 N.W.2d 273 (Minn.1985) (imposing public reprimand and 2 years probation where respondent had a history of discipline and admitted to neglect and non-communication with clients).

■ In addition, when an attorney is before us on a disciplinary charge for a second time, we will review the discipline to be imposed in light of the earlier misconduct. *In re Getty*, 452 N.W.2d 694, 698 (Minn.1990). We have imposed more severe sanctions when the current misconduct is similar to misconduct for which the attorney has already been disciplined. *In re Cutting*, 671 N.W.2d 173, 175 (Minn. 2003). We have disciplined Moore on three prior occasions. Most relevant to the current case is the 1997 admonition based on Moore's failure to attend a motion or obtain a continuance, and her failure to fully inform the client of the consequences of not attending the hearing. *In re Panel File 96–35*, 570 N.W.2d at 500. The referee found that the current misconduct was similar to the misconduct for which Moore has already been disciplined.

Most troubling to us are Moore's assertions that because family court judges allow attorneys to appear with the client even though they had not previously been identified as counsel of record, she could reasonably conclude that a family court judge would not expect her to appear at a hearing which she scheduled as attorney of record. Equally troubling is her assertion that she "did nothing unethical at any time." These circumstances support the imposition of the recommended discipline of a public reprimand and 2 years of supervised probation.

Accordingly, we order that respondent Yvonne B. Moore:

1. Be publicly reprimanded.

2. Be placed on supervised probation for a period of 2 years upon the following conditions:

a. Respondent shall cooperate fully with the Director's Office in its efforts to monitor compliance with this probation and promptly respond to the Director's correspondence by the due date. Upon the Director's request, respondent shall provide authorization for release of information and documentation to verify compliance with the terms of this probation.

b. Respondent shall abide by the Minnesota Rules of Professional Conduct.

c. Respondent shall be supervised by a licensed Minnesota attorney, appointed by the Director to monitor compliance with the terms of this probation. Respondent shall provide to the Director the names of four attorneys who have agreed to be nominated as respondent's supervisor within 2 weeks from the date of this opinion. If, after diligent effort, respondent is unable to locate a supervisor acceptable to the Director, the Director will seek to appoint a supervisor. Until a supervisor has signed a consent to supervise, the respondent shall on the first day of each month provide the Director with an inventory of active client files described in paragraph d, below. Respondent shall make active client files available to the Director upon request.

d. Respondent shall cooperate fully with the supervisor in her efforts to monitor compliance with this probation. Respondent shall contact the supervisor and schedule a minimum of one in-person meeting per calendar quarter. Respondent shall submit to the supervisor an inventory of all active client files by the first day of each month during the probation. With respect to each active file, the inventory shall disclose the client name, type of representation, date opened, most recent activity, next anticipated action, and anticipated closing date. Respondent's supervisor shall file written reports with the Director at least quarterly, or at such more frequent intervals as may reasonably be requested by the Director.

e. Respondent shall initiate and maintain office procedures which ensure that there are prompt responses to correspondence, telephone calls, and other important communications from clients, courts and other persons interested in matters that respondent is handling, and which will ensure that respondent regularly reviews each and every file and completes legal matters on a timely basis.

f. Within 30 days from the filing of this opinion, respondent shall provide to the Director and to the probation supervisor, if any, a written plan outlining office procedures designed to ensure that respondent is in compliance with the probation requirements. Respondent shall provide progress reports as requested.

g. Respondent shall pay $900 in costs and disbursements pursuant to Rule 24(a) and (b), RLPR.

So ordered.